# United States to use, Appellant, *v.* Baltimore Construction Company.

*Principal and surety—Contractor's bond—Labor or materials—Use of tugboat.*

A bond with surety given by a United States government contractor conditioned, inter alia, to "make full payments to all persons supplying it labor or materials in the prosecution of the work provided for in said contract," does not apply to a contract made by the contractor with the owner of a tugboat to pay for the use of the tug the lump sum of $25.00 per day without any regard to the nature or value of the specific work, where the evidence shows that the tug was largely used in carrying workmen of the contractor to and from their work, in carrying messages, and to some extent in towing rafts or logs.

Argued Oct. 12, 1911. Appeal, No. 150, Oct. T., 1911, by plaintiff, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1904, No. 4,290, on verdict for defendant in case of United States to use of James Gallagher, managing owner of the steam tug "Ellen MacAvoy," v. Baltimore Construction Company & National Surety Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Assumpsit upon a bond.

The opinion of the Superior Court states the case.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*F. S. Laws*, of *Lewis, Adler & Laws*, for appellant.—It is undoubtedly true that some of the early federal as well as several state decisions take a restrictive view of the meaning of the words "supplying labor and materials in the prosecution of the work," and hold that the material

must be actually put into the work, and the labor must be that of men who did the work. The later decisions, however, have taken a much broader view, and have allowed recoveries upon a more liberal basis, including sums due for transporting materials used in the construction: United States v. Kimpland, 93 Fed. Repr. 403; American Surety Co. v. Lawrenceville Cement Co., 110 Fed. Repr. 717; United States v. Morgan, 111 Fed. Repr. 474; United States v. Conkling, 135 Fed. Repr. 508; United States v. Fidelity & Deposit Co., 83 N. Y. Supp. 752.

*T. R. White*, with him *Howard W. Page*, for appellee.— The only claim permissible under the bond is for "labor and materials" actually used in the prosecution of the work: United States v. Kimpland, 93 Fed. Repr. 403; United States v. Morgan, 111 Fed. Repr. 474; American Surety Co. v. Lawrenceville Cement Co., 110 Fed. Repr. 717; United States v. Hyatt Co., 92 Fed. Repr. 442; United States v. Fidelity & Deposit Co. of Md., 83 N. Y. Supp. 752; United States v. Conkling, 135 Fed. Repr. 508; Title Guaranty & Trust Co. v. Crane Co., 219 U. S. 24.

OPINION BY HEAD, J., March 1, 1912:

The Baltimore Construction Company entered into a contract with the government of the United States by which it undertook to construct for the latter a bulkhead at a certain point in the Delaware river and to provide all of the labor and material required to complete said work according to plans and specifications furnished. Under the provisions of an act of congress regulating such matters, the contracting company was obliged to and did give a bond conditioned that the work would be properly completed according to the plans and specifications and that the contracting company should "promptly make full payments to all persons supplying it labor or materials in the prosecution of the work provided for in said contract."

To facilitate the performance of the work it had undertaken to do, the construction company entered into a

contract with the present use plaintiff by the terms of which the latter was to furnish a tugboat, with the crew necessary to man it, and perform such services as the construction company might see fit to assign to it. In consideration thereof the latter agreed to pay for the use of said tug the lump sum of $25.00 per day without any regard to the nature or value of the specific work to be done by it. As a result of this contract the construction company used the tug for a period of forty-four days and thus became indebted to the use plaintiff in the sum of about $1,100. A payment of $500 was made on account of this indebtedness but the construction company neglected and refused to pay the balance thereof. This action was then begun against the National Surety Company which had become the surety of the construction company on the bond already referred to. The plaintiff on the one hand contends that the claim for which he sues is covered by the condition of the bond already quoted. The defendant denies that under any proper construction of the language of the bond given could it be held liable for the plaintiff's claim. At the conclusion of the trial the learned court below gave a binding direction in favor of the defendant, and subsequently, after a careful opinion filed, entered judgment for the defendant on the directed verdict. The plaintiff appeals.

The plaintiff's cause of action, as clearly set forth in the statement of claim filed, is the refusal of the construction company to pay the contract price at which it had agreed to hire the plaintiff's boat. There is no attempt therein to differentiate the various classes of work performed by the boat and its crew during the period for which it was hired or to furnish any foundation for the introduction of proof showing the separate value of each kind of service rendered. He plants his cause on his right to recover the lump sum agreed on in the contract of hire. The proof in this respect follows the statement. The resulting consequence, as the learned court below viewed and as we view it, is that if the plaintiff, on the record

before us, cannot recover his contract price he cannot recover anything.

The evidence discloses that the tugboat was used in many different ways, largely in carrying the employees or workmen of the construction company between the city of Wilmington where they resided or lodged to the point some miles distant where the construction work was going on. It was engaged in carrying messages of various kinds for the contractor, in towing rafts of logs from points up or down the river to a place a few hundred feet from where the bulkhead was being constructed, at which point the logs were cut to the proper lengths and sharpened as piles. As required they were then towed to the point where they actually were used as part of the improvement contracted for.

Many cases have arisen in which the courts of the United States have been called on to construe the provision quoted from the bond given in the present case, such provision appearing in all bonds given in pursuance of the requirements of the act of congress referred to. It is agreed by counsel that these decisions must be regarded as controlling and should be followed by us. They are all cited and carefully reviewed in the opinion of the learned court below refusing to grant a new trial and entering judgment on the directed verdict. To again review them here would serve no good purpose and uselessly lengthen this opinion. A careful examination of them convinces us, as it did the court below, that, taking the plaintiff's claim as an entirety—which under the pleadings and evidence we must do—it cannot be held to be within the meaning or intendment of the condition of the bond which is the measure of the defendant's liability.

The case of the United States to use v. Conkling, 135 Fed. Repr. 508, is so nearly on all fours with the case before us that it cannot be well regarded as otherwise than controlling. It cannot be successfully argued it has been overruled by the later case of Title Guaranty & Trust Co. of Scranton v. Crane Co., 219 U. S. 24. The utmost that can

be fairly predicated of the case last cited is that it exhibits a tendency to a somewhat more liberal construction of the provision of the act of congress and of the bonds given in pursuance of it than the earlier cases would appear to warrant. Even if we were to concede that by giving the widest possible effect to the later case we might here justify the conclusion that a claim for compensation for one or even two of the items of work done by the plaintiff could be successfully made against the defendant surety in a proper action, we must still agree with the learned court below that there could be no recovery in the present proceeding. In his statement the plaintiff made no claim for such services as distinguished from the other work done by his boat, and he offered no evidence from which the trial court and jury could ascertain the value of such services. He stood to recover his contract price or nothing. With this object in view his statement was prepared and his proof offered. Convinced as we are that the surety company never undertook to be liable for such a claim, we can see no other course that could have been properly followed by the learned trial court than the one adopted.

Judgment affirmed.